UNITED STATES DISTRICT COURT  
CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **ED CV 23-681-JFW(KKx)** | Date: July 7, 2023 |
| Title: | Norma Bacani -v- HDR Engineering, Inc., et al. | |

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):** ORDER GRANTING PLAINTIFF'S MOTION FOR ORDER REMANDING ACTION TO STATE COURT [filed 5/12/23; Docket No. 21]

On May 12, 2023, Plaintiff Norma Bacani ("Plaintiff") filed a Motion for Order Remanding Action to State Court ("Motion"). On May 22, 2023, Defendant HDR Engineering, Inc. ("Defendant") filed its Opposition. On May 25, 2023, Plaintiff filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's June 12, 2023 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

On March 16, 2023, Plaintiff, on behalf of herself and all others similarly situated, filed a Class Action Complaint ("Complaint") against Defendant in Riverside Superior Court, alleging causes of action for: (1) Failure to Pay All Minimum Wages; (2) Failure to Pay All Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Failure to Reimburse Necessary Business Expenses; (6) Wage Statement Violations; (7) Waiting Time Penalties; and (8) Unfair Competition.

On April 14, 2023, Defendant removed this action, alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA").

In her Motion, Plaintiff argues that the amount in controversy does not exceed $5,000,000, and moves to remand this action to Riverside Superior Court. In its Opposition, Defendant argues that it has met its burden of demonstrating that at least $5,000,000 is in controversy.

II.     **Legal Standard**

    A.     **Removal Jurisdiction**

Federal courts are courts of limited jurisdiction. As a result, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In every federal case, the basis for federal jurisdiction must appear affirmatively from the record. *See Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted). Unless otherwise expressly provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court. 28 U.S.C. § 1441(a).

To remove an action to federal court under Section 1441(a), the removing defendant must demonstrate that original subject-matter jurisdiction lies in the federal courts. *Syngenta*, 537 U.S. at 33. In other words, the removing defendant bears the burden of establishing that removal is proper. *See Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the longstanding, near-canonical rule that the burden on removal rests with the removing defendant).

    B.     **CAFA Jurisdiction**

Under CAFA, the Court has original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there is minimal diversity. 28 U.S.C. § 1332(d)(2). The general rule is that a removing defendant's well-pleaded amount in controversy allegations should be accepted when not contested by the plaintiff or questioned by the court. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (holding that in determining the amount in controversy, courts first look to the complaint).

A plaintiff may either facially or factually contest the defendant's jurisdictional allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964-65 (9th Cir. 2020). Where a plaintiff mounts a facial attack, which accepts the allegations as true but asserts that they are insufficient on their face to invoke federal jurisdiction, the court need only determine whether the defendant has plausibly alleged the facts necessary to support removal. *Id.* at 959, 964-65 (*quoting Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). Where a plaintiff mounts a factual attack, the court must determine by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Unlike a facial attack, a factual attack challenges the underlying factual bases of the jurisdictional allegations. *Salter*, 974 F.3d at 964. A plaintiff need not introduce evidence of its own to mount a factual attack. *Harris*, 980 F.3d at 700. A factual attack need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence. *Id.*

The preponderance of the evidence standard means that the defendant must provide

evidence establishing that it is more likely than not that the amount in controversy meets or exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). The defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir. 1992). In addition to the contents of the notice of removal, the Court may consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal, such as affidavits or declarations. *Ibarra*, 775 F.3d at 1197; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). There is no presumption against removal jurisdiction in CAFA cases. *Dart Cherokee*, 574 U.S. at 89.

III.     Discussion

In her Motion, Plaintiff argues that this case should be remanded because Defendant has failed to establish that the amount in controversy exceeds $5,000,000. In order to decide Plaintiff's Motion, the Court must first determine if Plaintiff's arguments constitute a facial or factual attack on Defendant's Notice of Removal. *Salter*, 974 F.3d at 964-65. Plaintiff argues that Defendant did not submit sufficient proof supporting its calculations of the amount in controversy, which constitutes a facial attack. *Id*. at 961. However, Plaintiff also objects to Defendant's assumed violation rates and argues that many of the assumptions made by Defendant are unreasonable and unsupported by evidence. Specifically, Plaintiff objects as unreasonable and unsupported Defendant's assumptions that: (1) all Class Members missed at least one meal break and one rest break per workweek; (2) all Class Members worked shifts each workweek that were long enough to entitle them to meal and rest breaks; (3) Defendant failed to pay 100 percent of the Class Members who were terminated or resigned during the relevant time period the full amount of wages owed to them at termination or resignation; and (4) Defendant's wage statement violation rate was 100 percent. By challenging the factual basis of the assumptions underlying Defendant's calculations, Plaintiff has mounted a factual attack. *See Harris*, 980 F.3d at 700 (finding that the plaintiff mounted a factual attack where the plaintiff contested [the defendant]'s failure to demonstrate that all members of the Hourly Employee Class worked shifts long enough to qualify for meal and rest periods). Plaintiff does not need to put forward her own evidence to mount a factual attack and may do so by making a reasoned argument challenging defendant's assumptions. *Id*. As a result, this Court must determine whether Defendant has satisfied its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

In demonstrating that the amount in controversy exceeds $5,000,000, a defendant may rely on reasonable assumptions. *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). An assumption is reasonable when it is founded on the allegations of the complaint (*Id.* at 925), or has some reasonable ground underlying it. *Ibarra*, 775 F.3d at 1199. However, a defendant may not pull assumptions from thin air or establish removal jurisdiction by mere speculation and conjecture. *Id.* at 1197 and 1199.

In this case, Defendant submitted three declarations with its Notice of Removal – the Declaration of Penny Majeski, and the Declaration of William Manhart, and the Declaration of Hazel

Poei – and a second Declaration of Penny Majeski with its Opposition to Plaintiff's Motion.[1]  The declarations of Penny Majeski, Associate Vice President and Director of Employee Relations for Defendant, fail to discuss how the amount in controversy was calculated or the basis for the assumptions made in calculating the amount in controversy.  Instead, in the Notice of Removal, Defendant simply asserts that "if a plaintiff asserts statutory violations, the Court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise."  Notice of Removal, ¶ 29.  Defendant then assumes, without any factual support, that "it is plausible that Plaintiff is seeking to recover at least one hour of a meal period premium each week for all Putative Class Members" and "it is plausible that Plaintiff is seeking to recover at least one hour of a rest period premium each week for all Putative Class Members."  Notice of Removal, ¶¶ 38 and 44.  Defendant also assumed a one hundred percent violation rate with respect to wage statement violations and waiting time penalties.  Notice of Removal, ¶¶ 45-53.  In her declarations, Penny Majeski ("Majeski") merely states that for the period from March 16, 2019 to April 12, 2023: (1) Defendant employed approximately 391 non-exempt employees in California; (2) at least 84 of these California non-exempt employees separated from employment with Defendant; (3) the average hourly rate of pay for Defendants' California non-exempt employees was $54.53; and (4) Defendant's California non-exempt employees collectively worked 56,464 workweeks and 8,281 bi-weekly pay periods.  Declaration of Penny Majeski (Docket No. 1-1) ("Majeski Decl."), ¶¶ 1-8; Declaration of Penny Majeski (Docket No. 26-1) ("Second Majeski Decl."), ¶¶ 4 and 7-9.  In addition, Majeski states that for the period from March 16, 2023 to May 8, 2023: (1) Defendant's California non-exempt employees collectively worked 145,700 shifts that were five hours or more in length and 159,240 shifts that were three and one-half hours or more in length; and (2) Defendant's California non-exempt employees worked an average of 6.55 hours per shift.  Second Majeski Decl., ¶¶ 5-6 and 10.  Majeski also states that she has access to personnel and time records of individuals who are or were employed by Defendant as non-exempt employees in California and that she reviewed those records in connection with her declarations.  Majeski Decl., ¶¶ 2-3; Second Majeski Decl., ¶¶ 2-3.

      The Court concludes that this evidence fails to demonstrate that Defendant's calculations and assumptions regarding the amount in controversy are reasonable.  In her Complaint, Plaintiff defines the Class as "[a]ll non-exempt employees who work or worked for Defendants in California, during the four years immediately preceding the filing of the Complaint through the date of trial."  Complaint, ¶ 37.  However, with respect to the purported rest break violations, Plaintiff alleges only that "Plaintiff and other non-exempt employees were not provided with all 10-minute rest periods."  Complaint, ¶ 26.  With respect to the purported meal break violations, Plaintiff alleges that "Plaintiff and other non-exempt employees were often unable to take timely and uninterrupted 30-minute meal periods before the end of the fifth hour of work" and "they were not always allowed and permitted to take a mandated second meal period before the end of the tenth hour of work."  Complaint, ¶ 24.  In addition, Plaintiff's wage statement violation claim only relates to the wage statements for Plaintiff or other non-exempt employees for the pay periods where Defendant failed to pay "overtime, sick pay wages at the appropriate legal rate, and . . . meal and rest period premiums at the 'regular rate of pay.'"  Complaint, ¶ 30.

---

[1]  The Declaration of William Manhart, Chief Human Resource Officer for Defendant, only discusses Defendant's citizenship.  The Declaration of Hazel Poei, an attorney at Jackson Lewis, P.C., only discusses the service of the Summons and Complaint on Defendant and the filing and service of Defendant's Answer.

Although Plaintiff's allegations support the assumption that all Class Members suffered injury during the putative Class Period, they do not support Defendant's assumptions that every Class Member missed at least one meal break and one rest break every week of the Class Period, or that Defendant violated the California Labor Code with respect to wage statements and waiting times one hundred percent of the time. Defendant argues that its assumed violation rates are reasonable because Plaintiff alleges a "pattern and practice" of Labor Code violations. However, as the Honorable Jesus Bernal recently stated:

> The Court has little doubt that some courts have accepted a defendant's specific numerical assumption in a case in which the plaintiff alleged a policy, pattern and/or practice of illegal conduct . . . [T]he problem is not necessarily that Defendants picked a violation rate that is too high. The problem is that the Court cannot discern why it picked that number at all, because Defendants never adequately explain their chain of reasoning and certainly provide no real evidence in support of it. As far as the Court can tell, Defendants simply picked that violation rate because it might seem low enough to be facially "reasonable" and still high enough to keep them on track to hit their magic number of $5,000,000. This approach amounts to little more than plucking a violation rate out of the air and calling it "reasonable"— a wasteful and silly, but routine, exercise in mathematical fantasyland.

*see also Peters v. TA Operating LLC*, 2023 WL 1070350 (C.D. Cal. Jan. 26, 2023); *see, also, Gonzalez v. Randstand Professionals US, LLC*, 2022 WL 17081053, *3-*4 (C.D. Cal. Nov. 18, 2022) (holding that "[i]f one is going to assume a violation rate based on vague language in a complaint, then there is no basis for assuming that a 100% or 50% or even 25% violation rate is any more or less reasonable than a violation rate of once per week or once per month") (internal quotation omitted); *Duran v. Allegis Global Solutions, Inc.*, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021) (holding that the defendant's "assumption of a once-per-week incidence of overtime and minimum wage, and meal and rest break violations is even more arbitrary. It would be just as consistent with the complaint to assume a frequency of once-per-month, or possibly once-per-quarter. [Defendant] again did not provide any extrinsic evidence to tip the analysis in its direction, or point to anything in the complaint that might do so"); *Moore v. Dnata US Inflight Catering LLC*, 2021 WL 3033577, at *2 (N.D. Cal. July 19, 2021) ("[Defendant] did not provide any extrinsic evidence independently validating a 100% violation rate. Its main argument is that the complaint leaves no room for assuming less than 100% . . . but that is rebutted by the plain language of the allegations. [Plaintiff] consistently alleges that [Defendant] acted at times and on occasion in a manner that violated California state employment laws . . . No numbers are attached to those qualifiers. [Plaintiff] also consistently alleges that the violations may have happened to only some of [Defendants] employees during the class period"). Indeed, the arbitrariness of the violation rates chosen by Defendant is belied by Defendant choosing different violation rates for meal and rest breaks for purposes of calculating the amount in controversy in its Opposition, arriving at a different amount in controversy (albeit still in excess of the "magic number" of $5,000,000), and concluding that the assumptions made to reach the new amount in controversy are as "reasonable" as the assumptions made in the Notice of Removal.[2]  *See, e.g.,* Defendant's Opposition, 9:18-10:2 ("Although Defendant is entitled to

---

[2] In the Opposition, Defendant maintained that a one hundred percent violation rate was reasonable for waiting time and wage statement penalties.

make a reasonable assumption that meal period violations occurred for at least half the shifts during the time period of March 16, 2019 through May 8, 2023, it will use a conservative assumption that meal period violations occurred only 20 percent of the time. Because there are 145,700 shifts of five hours or more that qualify for a meal period, a 20 percent violation rate will result in 29,140 shifts with meal period violations. The Putative Class Members received an average rate of pay of $54.53 per hour . . . Thus, based on the Complaint's allegations of a policy and practice that 'often' resulted in missed meal periods and unpaid meal period premiums, it is plausible that Plaintiff is seeking to recover an amount in controversy of over $1,589,004.20 in connection with her meal period violation claim (29,140 shifts x $54.53 per hour)"); Defendant's Opposition, 10:17-11:2 ("Although Defendant is entitled to make a reasonable assumption that rest period violations occurred for all shifts during the time period of March 16, 2019 through May 8, 2023, Defendant will use a conservative assumption that rest period violations occurred only 30 percent of the time. Because there are 159,240 shifts of three and one-half hours or more that qualify for a rest period, a 30 percent violation rate will result in 47,772 shifts with rest period violations . . . Thus, based on the Complaint's allegations of a policy and practice that always resulted in missed rest periods and unpaid rest period premiums, it is plausible that Plaintiff is seeking to recover an amount in controversy of over $2,605,007.16 in connection with her rest period violation claim (47,772 shifts x $54.53 per hour)").

As a result, the Court concludes that there is no factual or evidentiary basis for Defendant's assumptions, and that all of Defendant's calculations rest on assumptions that are neither supported by evidence nor based on the allegations of the Complaint.[3] *See, e.g., Salazar v. Johnson and Johnson Consumer Inc.*, 2018 WL 4560683 (C.D. Cal. Sept. 19, 2018) (remanding action and finding that "Defendant sets forth no facts supporting their assumed violation rate of 20% (or even 5%), nor do Plaintiffs allegations of periodic violations point to this conclusion. This arbitrary assumption does not permit the Court to find that Defendants have established by a preponderance of the evidence the amount in controversy for Plaintiffs meal and rests break claims"); *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600 (N.D. Cal. June 14, 2013) (holding that with respect to waiting time penalties, a defendant may "assume a 100% violation rate only where such an assumption is supported directly by, or reasonably inferred from, the allegations in the complaint"); *Duran*, 2021 WL 3281073 (holding that the defendant's "assumption of a 20% violation rate for the wage statement claims is equally unavailing" as the defendant's assumptions on other wage and hour violations).

Moreover, a district court does not need to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden. *See Harris*, 980 F.3d at 701; *see also Marquez v. Southwire Co., LLC*, 2021 WL 2042727, *5 (C.D.

---

[3] Defendant also includes attorneys' fees in calculating the amount in controversy, which is permitted when fees are authorized by statute. *See Fritsch v. Swift Transp. Co. of Ariz. LLC*, 899 F.3d 785, 794 (9th Cir. 2018). However, because the calculations discussed above are flawed, the Court cannot address the reasonableness of the alleged attorneys' fees, which necessarily rest on these flawed calculations. *See, e.g., Vanegas v. DHL Express (USA), Inc.*, 2021 WL 1139743, at *4–5 (C.D. Cal. Mar. 24, 2021) (concluding that "Defendant has failed to meet its evidentiary burden regarding attorneys' fees for purposes of removal because, as noted above, Defendant's calculations of the class recovery are not adequately supported").

Cal. May 21, 2021) (holding that the court will not propose a reasonable violation rate for the plaintiff's overtime and minimum wage claims, because "the court need only 'weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own'") (quoting Harris, 980 F.3d at 701).  The purpose of holding Defendant to the preponderance of the evidence standard in this context is "to ensure that CAFA's requirements are . . . tested by consideration of real evidence and the reality of what is at stake in the litigation." *Ibarra*, 775 F.3d at 1198.  In this case, given Defendant's unsupported assumptions, the Court has no sense of "the reality of what is at stake" in this litigation. *Id.*  Moreover, to the extent Defendant believes such reasoning is unfair, this Court, like many others in the Central District, agrees with an observation originally made by the Honorable George Wu:

> Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement.  Perhaps they simply get Plaintiff to identify what the violation rates would be for Plaintiff, and then use that information as a sample to extrapolate out the calculation for the entire class.

*Toribio v. ITT Aerospace Controls LLC,* 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019) (concluding that "defendants in this type of litigation will either have to change their approach along the lines the Court has suggested above (take some discovery in the wealth of time CAFA affords to do so), the Ninth Circuit will have to reconsider *Ibarra* and tell district courts to accept whatever number a defendant can imagine, or the Supreme Court or (don't hold your breath) Congress will have to step in to clear up what has become a wasteful and silly, but routine, exercise in mathematical fantasyland"); *see also Peters*, 2023 WL 1070350 (C.D. Cal. Jan. 26, 2023) (granting motion to remand and "agree[ing] with" Judge Wu's observation); *Gonzalez*, 2022 WL 17081053, at *4 ("contin[uing] to agree with" Judge Wu's observation).

Accordingly, the Court concludes that Defendant has failed to demonstrate that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence.  *See, e.g., Marentes*, 2015 WL 756516, at *10 ("Because [defendant] fails to provide facts supporting the calculations, [defendant] has failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000"); *see also Ibarra*, 775 F.3d at 1199 ("Because the complaint does not allege that [defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks, [defendant] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions").

### IV.     Conclusion

For all the foregoing reasons, Plaintiff's Motion is **GRANTED**, and this action is **REMANDED** to Riverside Superior Court for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.